### CALDER *v.* SHEPPARD ET AL.

LIQUOR LAW.—*Act of* 1875.—*Immorality or Unfitness of Applicant for License.*— The fact that an applicant for a license, under the act of March 17th, 1875, 1 R. S. 1876, p. 869, regulating the sale of intoxicating liquors, occasionally indulges in a drink of intoxicating liquor, does not, *per se*, constitute that immorality or unfitness which, by such statute, precludes him from receiving a license.

SAME.—*Intoxication.*—Evidence of intoxication of the applicant in the remote past is not of itself sufficient to establish an allegation, that he is "in the habit of becoming intoxicated.

From the Morgan Circuit Court.

*J. M. Coleman, J. H. Jordan* and *J. V. Mitchell,* for appellant.

*G. A. Adams* and *F. P. A. Phelps,* for appellees.

PERKINS, J.—Application for a license to retail spirituous liquors.

Remonstrance filed. License refused by the county commissioners. Appeal to the circuit court. Trial by jury. Verdict against the applicant, and judgment, over a motion for a new trial, on the verdict.

The overruling of the motion for a new trial is assigned for error.

One of the grounds of the motion for a new trial was, that the verdict was not supported by evidence.

The principal issues in the cause were raised by the remonstrance. That paper, after stating that the applicant had given public notice of his intention to apply, at the then session of the board of county commissioners, for a

license to retail on certain described premises, states, that the remonstrants solemnly protest, "because said John D. Calder is not a fit person to be entrusted with the sale of intoxicating liquor, for the reason that he is in the habit of becoming intoxicated, and is a person of immoral character, and keeps a disorderly house, and has disregarded the provisions of the former law; and because he is not making this application for his own interest and benefit, but for the interest and benefit and upon behalf of one Alexander Lockhart, all of which these remonstrants are ready to prove at such time as your honorable board may appoint to hear the testimony in that behalf."

The following witnesses testified touching the character, habits and fitness to retail, of Calder, viz.: James Downey, Henry Guetig, Stephen Mattler, George W. Warner, marshal of the town of Martinsville, Thomas H. Dixon, sheriff of Morgan county, William Kingsberry, Henry Renner, Patrick Kane, William Hynds, Perry F. Douglas, trustee of Martinsville township, Elliott F. Branch and Willis Record, clerk of Morgan county.

The foregoing witnesses all gave the applicant a good character for sobriety, becoming deportment and business habits, and proved the *bona fide* character of his application for license.

On the part of the remonstrants, the following witnesses were examined. We give their testimony in full:

Squire Hiram Worman testified: "I live one mile from Mahalasville; have known Mr. Calder five or six years; saw him intoxicated at my house, a year or so ago; he had a lawsuit there; was his own attorney; I thought he was intoxicated; did not see him drink; he weren't as he always was; have seen him frequently; he is not in the habit of becoming intoxicated; the time I speak of was about one year and a half ago."

Whit. Vansickle testified: "I live at Mahalasville; I saw Calder once, four years ago, when I thought he was

under the influence of liquor; his business house was close to my house; he had cider there; there were two saloons in town then; I heard some disturbance—no, there never was any disturbance in his house."

Peter Miller testified: "I never saw John Calder intoxicated; I never said at Record's livery stable in Martinsville, when Calder's case was on trial before the board of commissioners, that, 'if Calder could make it any body could, for I have seen him so full he couldn't make it.'"

George W. Preston testified: "I am acquainted with Peter Miller, who has just testified; I was at the livery stable of Record at the time referred to; I heard Peter Miller say, that 'if John Calder could make it,' referring to his getting license, 'any body could, for he had seen him so full he could not make it.'"

Andrew J. Vansickle testified: "I live at Mahalasville; I saw John D. Calder once, four or five years ago, in the road; he did not ride very straight; I thought he was under the influence of liquor; he is not in the habit of becoming intoxicated, that I know of."

John Prather testified: "I never saw John D. Calder intoxicated; have been with him a great deal; have drank beer with him; have had considerable dealings with him; he is as straight a man as I ever saw in business; he is not in the habit of becoming intoxicated."

John Keck testified: "I am the bar-tender in Nickum's saloon, in Martinsville, Indiana; I have seen John Calder drink; he has been in our house several times; sometimes he would drink and sometimes he would not; I have seen him play at billiards."

There was no evidence tending to establish the charges in the remonstrance.

The applicant made out his case under section 4 of the temperance act. 1 R. S. 1876, p. 870.

That act requires that the applicant for license shall be a " male inhabitant over the age of twenty-one years," that he " be a fit person to be entrusted with the sale of

intoxicating liquor," and "not in the habit of becoming intoxicated;" and provides that any voter may remonstrate "on account of immorality or other unfitness, as is specified in this act."

The applicant in this case proved, that he was a "male inhabitant over twenty-one years of age," was "a fit person to be entrusted with the sale of intoxicating liquor," and that he was "not in the habit of becoming intoxicated."

The testimony of the remonstrants does not tend to prove the contrary. It is positive in the applicant's favor, that he was not in the habit of becoming intoxicated, and it does not prove a single instance of his intoxication. Worman says he thought he was intoxicated once, a year and a half ago, though he did not see him drink. Whit. Vansickle saw Calder once, four years ago, when he thought he was under the influence of liquor. Andrew J. Vansickle saw Calder once, four or five years ago, when he thought he was under the influence of liquor.

This testimony refers to a period of time too remote from the present, and is without force, in itself, as evidence.

The remonstrants attempted to prove the applicant guilty of no other immorality or unfitness than the drinking of a glass of intoxicating liquor would constitute.

The question now occurs, why, upon the evidence in the cause, was Calder not entitled to license? Did the drinking occasionally of a glass of intoxicating liquor constitute immorality or unfitness, as specified in the temperance act?

In answering this question, it may be proper to briefly consider the grounds, the reasons, which should govern, in answering the question. And, first:

All fair-minded men will agree that the statute upon the subject (the temperance statute), fairly construed, must control in the decision of questions arising upon the

statute.˙ What is a fair construction of the statute, may be a question. Let us examine it:

1. It authorizes the retailing of intoxicating liquors, by proper persons, in certain places;

2. It authorizes the drinking of intoxicating liquors in small quantities, by sober persons, in the places where the sale is authorized.

From these two facts, it must follow that the temperance law can not be construed as constituting the simple occasional drinking of a glass of intoxicating liquor an immorality or an unfitness in a person to be a retailer. In the eye of the ·temperance law, then, the occasional drinking of a glass of beer or whiskey is not, *per se,* immoral.

Turning again to the provision of the statute touching the person who may be refused license to retail, we find that " any applicant on account of immorality or other unfitness, as is specified in this act," may be refused. The specification in the act referred to is as follows, and constitutes the first proviso in section 4 of said temperance act, and is found on page 870, 1 R. S. 1876:

" Provided, Said applicant be a fit person to be entrusted with the sale of intoxicating liquor, and if he be not in the habit of becoming intoxicated; but in no case shall a license be granted to a person in the habit of becoming intoxicated."

Taking the above quoted provisions of the statute together, they preclude an unfit or immoral person from obtaining license; but the statute nowhere defines the unfitness or immorality contemplated, except in one particular, that is, " the habit of becoming intoxicated; " and this definition excludes the conclusion, that the occasional drinking of a glass of ale, wine or whiskey, by a man not in the habit of becoming intoxicated, constitutes immorality or unfitness which will preclude him from obtaining a license to retail, as does the fact, that the statute

itself authorizes such drinking and sale, as we have heretofore shown in this opinion.

The statute, then, does not make such drinking and sale immorality or unfitness. And if we turn to that other standard of morality, the Scriptures of the Old and New Testaments, we are brought to the same conclusion. Among the revelations and injunctions therein found are the following:

" The Lord causeth to grow the wine that maketh glad the heart of man." 104 Psalm, verse 15.

" Give strong drink unto him that is ready to perish, and wine to those that be of heavy hearts." 31 Proverbs, verse 6.

" Drink no longer water, but use a little wine for thy stomach's sake and thine often infirmities." Paul to Timothy—1 Timothy, verse 15.

It is clear, therefore, that the evidence did not tend to prove immorality or unfitness in the applicant, and that a new trial should have been granted.

The judgment is reversed, and the cause remanded, etc.